IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL No. 02-688-2 |
| | : | |
| v. | : | |
| | : | |
| LISA ERICKSON | : | |

**MEMORANDUM OPINION**

**RUFE, J.**                                                                                                           **April 28, 2006**

       The Court issues this Memorandum Opinion to clarify and expound on its decision to revoke Lisa Erickson's ("Defendant") probation. The Court revoked Defendant's probation from the bench on April 7, 2006 at the conclusion of Defendant's probation revocation hearing. The facts underlying Defendant's conviction are set forth below.

       In August 1998, the United States Drug Enforcement Administration ("DEA") initiated an investigation into allegations that Lisa Erickson ("Defendant") and a confederate were forging prescriptions for Percocet for personal use and/or distribution. During the course of the investigation, the DEA discovered the following:

1. Starting in or around July 1996, Defendant began employment as a receptionist at a dental office in Philadelphia, Pennsylvania.

2. Defendant's employer maintained a supply of prescription pads, which he used to write various prescriptions for controlled substances for his dental patients.

3. Defendant learned during the course of her employment that pharmacies presented with prescriptions from her employer telephoned the dentist's office to verify the legitimacy and authenticity of the prescriptions.

4. Defendant, as the office receptionist, occasionally fielded telephone calls from the pharmacies inquiring about the authenticity of her employer's prescriptions.

5. Between March 1997 and August 1998, Defendant provided her accomplice access to her employer's office to steal blank prescription pads.

6. Defendant and her accomplice then used the pad(s) to forge the name of Defendant's employer on approximately 130 prescriptions to obtain Percocet, a narcotic substance, from area pharmacies.

7. Defendant and her confederate arranged a scheme whereby the accomplice would notify Defendant when he intended to fill one of the forged prescriptions to alert Defendant to answer the telephone at the dental office when the pharmacy called to verify the prescription.

8. Sometimes, Defendant and her accomplice filled the forged prescriptions themselves; other times, they enlisted the assistance of others to fill the forged prescriptions using their health insurance cards. When others were enlisted to fill the forged prescriptions, Defendant and her accomplice split the acquired pills with the confederate. Most of the time, however, Defendant and her accomplice consumed the pills.

Based on the foregoing events, Defendant was indicted on October 23, 2002 of conspiring to distribute and to possess Oxycodone with intent to distribute in violation of 21 United States Code sections 841(a)(1) and 841(b)(1)(C) (Count One) and of aiding and abetting in obtaining possession of Oxycodone by forgery in violation of 21 United States Code section 843(a)(3) and 18 United States Code section 2 (Count Two). Thereafter, on June 20, 2003, Defendant pled guilty to Counts One and Two of the indictment. On October 10, 2003, the Court sentenced Defendant to five years probation on those charges.[1]

---

[1] In imposing Defendant's original sentence, the Court departed downwardly from the guideline sentence of twenty-one to twenty-seven months. See U.S.S.G. § 5K2.0 (2003). The Court's downward departure from the sentencing guidelines were based on several factors. Among them, the Court considered the following when imposing Defendant's original sentence. First, Defendant had undertaken significant post-offense rehabilitation efforts. At the time of her sentence, Defendant was gainfully employed, receiving psychological counseling and drug treatment, and had not been involved in additional criminal activity. Second, the Court considered the facts that Defendant was addicted to prescription drugs at the time of her offense and committed the crimes charged for use rather than profit. Third, the Court considered that the physical and mental abuse meted out by her accomplice (an intimate acquaintance) contributed significantly to Defendant's participation in the criminal conspiracy. Finally, the

Thereafter, Defendant commenced what can only be characterized as a pattern of behavior reflecting diligent disregard for her personal well-being or the Court's sentence. On August 25, 2004, the Court modified the conditions of Defendant's probation to include forty hours of community service based on Defendant's unsanctioned sojourn to Wildwood, New Jersey. On December 5, 2005, the Court conducted a hearing to determine whether or not to revoke Defendant's supervised release after Defendant submitted a urine specimen to her probation officer that showed the presence of heroin. Upon conducting the hearing, the Court accepted the parties' agreement to maintain the conditions of Defendant's probation—with the additional condition that Defendant participate in an inpatient drug treatment program.[2]

Most recently, on April 7, 2006, the Court conducted another hearing to determine whether or not to revoke Defendant's supervised release. This hearing was prompted by Defendant's submission of another urine sample showing that she had been using drugs—this time the test revealed the presence of morphine—and after Defendant admitted to her probation officer that she had nasally ingested two $10 bags of heroin around March 22, 2006.

At the April 7th hearing, Defendant admitted to using heroin "as a coping

---

Court considered that almost all of Defendant's criminal record was authored during a one year span and in furtherance of a severe heroin addiction. Additionally, the Court imposed several "special conditions" on Defendant's original sentence. Specifically, the Court ordered Defendant: (1) to be on house arrest with electronic monitoring for the first six months of her sentence; (2) to remain in drug and alcohol treatment aftercare; (3) to remain in a drug treatment program; (4) to participate in mental health treatment; (5) to provide a monthly report to her probation officer from her drug treatment providers; (6) to disclose to any treating physicians her history of drug addiction; and (7) to disclose to her present employer her conviction and sentence on the charges in the indictment.

[2] Defendant spent thirty-five days in inpatient drug treatment at Bowling Green Brandywine in Kennett Square, Pennsylvania. During her inpatient treatment program, Defendant left the facility without authorization–in violation of her probation–but her probation officer was able to gain her readmittance to the program. Eventually, Defendant was discharged from the program.

3

mechanism" to deal with an ongoing custody battle involving her daughter.[3]  Additionally, Defendant's admissions, demeanor, and countenance at the April 7th hearing conveyed her lack of remorse for her prior criminal activity and her persistent unwillingness to commit to rehabilitation for her drug addiction.  Although admitting recent drug use and violating her sentence yet again at the April 7th hearing, Defendant prayed for leniency in the form of house arrest, purportedly in order to care for her child and to continue treatment in an intensive outpatient program.  However, Defendant's disingenuous request was not well received in light of her contemporaneous admission that she injected herself with heroin just two days prior to the hearing.[4]

Based on the information provided at the April 7th hearing, it was uncontested that Defendant had again violated the terms and conditions of her probation.  As such, the Court revoked Defendant's probation and imposed a term of incarceration in the custody of the Bureau of Prisons for five months and upon release Defendant is to serve six months of house arrest.[5]  The remainder of the terms of Defendant's probation, which reflect her rehabilitative needs as well as the need to deter her from future criminal behavior and to protect the community, remained in effect, as they were not violated.

---

[3] While the Court is sensitive to Defendant's ancillary custody issues, particularly as they concern her current dispute involving her eight year old daughter, the Court has not been, nor will it be, involved in or affected by the disposition of that matter.  In fact, Defendant has repeatedly offered her custody battle to the Court as a mitigating circumstance that the Court recognizes as a true but insufficient motivation to rehabilitate herself, which Defendant has been unable to accomplish to date.

[4] N.T. 20.  Defendant's admission to her probation officer and to the Court that she recently had injected herself with heroin in an inconspicuous part of her anatomy further reveals her immediate and drastic addictive needs.

[5] The Court allowed that Defendant's house arrest be converted to an inpatient drug rehabilitation program if Defendant undergoes a psychological evaluation and the evaluation calls for such a program.

Under 18 United States Code section 3565(a), the Court "may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in section 3553(a) to the extent that they are applicable . . . revoke the sentence of probation and resentence the defendant . . . ."[6] Applicable here are sections 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), and (a)(5). The Court must consider under section 3553(a)(1) "the nature and circumstances of the offense and the history and characteristics of the defendant."[7] Under sections 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D), the Court must consider the need for the sentence to "afford adequate deterrence to criminal conduct . . . [,] to protect the public from further crimes of the defendant . . . [,] and to provide the defendant with needed . . . correctional treatment in the most effective manner," respectively.[8] And under sections 3553 (a)(4) and (a)(5) the Court must consider "the kinds of sentence and the sentencing range established for– . . . in the case of a violation of a probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission . . . [and] any pertinent policy statement issued by the Sentencing Commission."[9]

Here, Defendant pled guilty to conspiring to distribute and possess Oxycodone and obtaining possession of Oxycodone by forgery. When revoking her probation and imposing her sentence the Court, as it must, considered the following pursuant to section 3553(a). First, to commit the crimes that Defendant pled guilty to she coopted her role as an employee at a dental

---

[6] 18 U.S.C. § 3565(a) (2005).

[7] 18 U.S.C. § 3553(a)(1) (2005).

[8] 18 U.S.C. §§ 3553(a)(2)(B)-(a)(2)(D) (2005).

[9] 18 U.S.C. §§ 3553(a)(4)-(a)(5) (2005).

office to abscond with prescription pads to forge prescriptions to sate her drug addiction. Second, while the underlying drug offenses occurred between eight and nine years ago, Defendant continued to violate the conditions of her probation throughout her sentence in order to use drugs—even up until two days before her last hearing. Third, based on Defendant's in-court and out-of-court behavior, the Court is persuaded that Defendant is incapable of withstanding temptation to engage in almost any conduct to subsidize her drug addiction—including committing additional criminal acts. Finally, based on Defendant's habitual drug abuse, correctional treatment is an obvious need.

Under sections 3553(a)(4) and (a)(5), the Court considered the following. First, Defendant originally was sentenced on a Class C felony, had a Criminal History Category of II, and she committed a Grade C violation. Second, pursuant to the policy statement set forth in section 7B1.3(a) of the Sentencing Guideline Manual "[u]pon a showing of a Grade C violation, the court may revoke probation or supervised release . . . ."[10] Third, where a court revokes probation and imposes a sentence of imprisonment, "the applicable range of imprisonment is . . . set forth in section 7B1.4."[11] Fourth, according to section 7B1.4, the suggested range of imprisonment on a Grade C violation for a felon with a Criminal History Category of II is four to ten months.[12] Finally, according to section 7B1.3(f), "[a]ny term of imprisonment imposed upon the revocation of probation . . . shall be . . . served consecutively to any sentence of imprisonment

---

[10] U.S.S.G. § 7B1.3(a)(2) (2003).

[11] U.S.S.G. § 7B1.3(b) (2003).

[12] See U.S.S.G. § 7B1.4 (2003).

6

that the defendant is serving."[13]  Based on the foregoing considerations, the Court imposed a sentence of five months imprisonment to be followed by six months of house arrest.

                                              Respectfully Submitted,

                                              **/s/ Cynthia M. Rufe**
                                              Cynthia M. Rufe, J.

---

[13] U.S.S.G. § 7B1.3(f) (2003).